1999 ME 182

**State of MAINE**

v.

**Donald J. MILLER**

Supreme Judicial Court of Maine.

Argued Oct. 6, 1999.

Decided Dec. 8, 1999.

---

James Billings, Law Student (orally), Michael E. Povich, District Attorney, Ellsworth, for State.

Spencer Ervin (orally), Bass Harbor, for defendant.

Before CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Donald J. Miller appeals from a judgment of conviction entered in the Superior Court (Hancock County, *Hjelm, J.*) following a jury trial in which he was found guilty of four counts of negotiating worthless instruments and two counts of theft by deception.[1] Miller contends that the trial court made evidentiary errors and that the evidence was insufficient to sustain the verdict. We conclude that the evidence was sufficient to sustain the verdict, and address only his argument regarding the admission of lay opinion testimony regarding the identity of a person in a surveillance photograph. We affirm the judgment.

## I. BACKGROUND

[¶ 2] On September 27, 1991, a person calling himself Robert John Stephens opened two checking accounts in separate banks in Ellsworth, one at Union Trust Company and the other at Bar Harbor Banking & Trust Company, both in the name of Acadia Antiques. On a single day in November, Stephens deposited a number of checks in each of the Ellsworth

---

1. Miller and the State entered into an agreement after trial, pursuant to which Miller withdrew his motions for acquittal and for a new trial and the State agreed not to seek any unsuspended jail time beyond that served by Miller while he was awaiting trial. On agreement of the parties, the court then sentenced Miller to three years on each count to be served concurrently, with all but time served of 194 days suspended, plus restitution of $24,845 and four years probation.

accounts. The following day, Stephens withdrew cash totalling $24,845 from the accounts by cashing six checks, three at each bank. On November 29, 1991, all six checks were returned for insufficient funds. By that time, the banks were unable to locate Stephens.

[¶ 3] Stephens had been photographed cashing the checks by a surveillance camera at Union Trust on November 22, 1991. Shortly after the crimes were committed, Harold K. Page of the Ellsworth Police Department obtained an image of Stephens from the Union Trust camera and showed it to Marlene Lloyd, an employee of Bar Harbor Banking & Trust. Lloyd identified the man in the picture as being the same Robert John Stephens who had opened the Acadia Antiques account at Bar Harbor Banking & Trust in September of 1991.

[¶ 4] Several years later, Donald L. Miller, then living in New York, became the focus of the investigation into the thefts.[2] Lloyd was shown a photo array and identified a 1993 photo of Miller as depicting the same man who had opened the account in September of 1991. Miller was eventually arrested and indicted on four counts of negotiating a worthless instrument in violation of 17–A M.R.S.A. § 708 (1983 & Supp.1998) and two counts of theft by deception in violation of 17–A M.R.S.A. § 354 (1983), all related to the activities in Ellsworth. At the ensuing jury trial, Miller did not dispute that the crimes had been committed. Moreover, through counsel, he agreed that the 1993 photo shown to Lloyd was a picture of him.

[¶ 5] The only real issue for the jury was the identification of the man who held himself out to be Robert John Stephens.

The State presented three witnesses who identified Miller as the person in the surveillance photos. Those witnesses were Lloyd and two New York police detectives, Anthony Zacarese and William Aylward. Lloyd identified the surveillance photos as depicting the man she knew as Robert John Stephens and identified the 1993 photo of Miller as being the same person.[3] Among other things, the detectives testified that, in their opinions, Miller was the man in the Union Trust surveillance photo. Miller was convicted on all counts and filed this appeal.

## II. DISCUSSION

■ [¶ 6] Miller contends that the trial court erred when it allowed Detectives Zacarese and Aylward to give their lay opinions that Miller was the man pictured in the Union Trust surveillance photograph. Because the detectives did not meet Miller until several years after the crime was committed—and the surveillance photos were taken—Miller argues that they were in no better position to identify him as the Robert John Stephens pictured in the photos than was the jury. Miller did not object at trial to the admission of the witnesses' opinions. We therefore review the admission of their testimony for obvious error affecting Miller's substantial rights.[4]

■ [¶ 7] The question presented may be framed as follows: may a lay witness who is a law enforcement official give an opinion regarding the identity of a person in a photograph if that witness was not present at the taking of the photograph? The question requires an analysis under

2. Miller had a history of similar crimes in a multi-state area.

3. By the time of trial, Lloyd could not identify Miller in the courtroom.

4. When a defendant does not object to the admission of testimony, we review the admission for obvious error. See State v. Pelletier,

673 A.2d 1327, 1330 (Me.1996). To vacate for obvious error, the error must be "so highly prejudicial and so taint[ ] the proceedings as virtually to deprive the defendant of a fair trial." Id. See also State v. Weisbrode, 653 A.2d 411, 415 (Me.1995); State v. Magoon, 649 A.2d 1115, 1117 (Me.1994); State v. True, 438 A.2d 460, 468 (Me.1981); M.R.Crim. P. 52(b); M.R. Evid. 103(d).

Maine Rules of Evidence 701 and 403.[5] Although we have not as yet addressed this issue, a number of federal courts and a few state courts have ruled on similar facts that admission of such testimony is proper if certain conditions are met.[6]

A. Application of Rule 701

[¶ 8] Before reaching the question of possible prejudice that may occur when the witness is a law enforcement official, we address the basic question of the admissibility of lay opinion testimony on photographic identifications. We recently addressed the subject of nonexpert opinion in *Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales, Inc.*, 1998 ME 53, 707 A.2d 1311 (1998):

> Pursuant to M.R. Evid. 701, if a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those which are rationally based on the perception of the witness and which are helpful to a clear understanding of his testimony or the determination of a fact in issue. Thus, although an opinion by a lay witness may be permissible if based on his own

perception, such perception must be "adequately grounded on personal knowledge or observation just as would be the case with simple statements of fact." *Id.* ¶ 21, 707 A.2d at 1317 (quoting Field & Murray, *Maine Evidence* § 701.1 (4th ed.1997)).

[¶ 9] As with any other opinion by a lay witness, testimony regarding the identity of a person depicted in a photograph must be relevant, rationally based on the witness's own observations, and helpful to the jury. *See* M.R. Evid. 701. These elements will be present when "the witness possesses sufficiently relevant familiarity with the defendant that the jury cannot also possess, and when the photographs are not either so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification." *United States v. Jackman*, 48 F.3d 1, 4–5 (1st Cir.1995) (citing *United States v. Farnsworth*, 729 F.2d 1158, 1160 (8th Cir.1984)). Although it is not fatal to the admission of the testimony that the witness did not meet the defendant until sometime after the photographs were taken, the admission of

---

5. The rules provide as follows:
   **RULE 701. OPINION TESTIMONY BY LAY WITNESSES**
   If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.
   M.R. Evid. 701.
   **RULE 403. EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME**
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
   M.R. Evid. 403.

6. When applying the Maine Rules of Evidence, we may look to cases applying the Federal Rules of Evidence. *See State v. Wells*,

443 A.2d 60, 63 (Me.1982). Federal courts have addressed the question in a number of instances. *See, e.g., United States v. Cobleigh*, 75 F.3d 242, 249 (6th Cir.1996) (construing the Federal Rules of Evidence); *United States v. Jackman*, 48 F.3d 1, 4–5 (1st Cir.1995) (same); *United States v. Maddox*, 944 F.2d 1223, 1230–31 (6th Cir.1991) (same); *United States v. Stormer*, 938 F.2d 759, 761–64 (7th Cir.1991) (same); *United States v. Towns*, 913 F.2d 434, 445 (7th Cir.1990) (same); *United States v. Farnsworth*, 729 F.2d 1158, 1160–61 (8th Cir.1984) (same); *United States v. Henderson*, 68 F.3d 323, 325–27 (9th Cir. 1995) (same); *Gibson v. State*, 709 N.E.2d 11, 15 (Ind.Ct.App.1999) (construing Indiana Rules of Evidence); *Commonwealth v. Gagnon*, 16 Mass.App.Ct. 110, 449 N.E.2d 686, 696 (1983) (construing Massachusetts Rules of Evidence), *rev'd on other grounds sub nom. Commonwealth v. Bourgeois*, 391 Mass. 869, 465 N.E.2d 1180 (1984); *Rossana v. State*, 113 Nev. 375, 934 P.2d 1045, 1048–49 (1997) (per curiam) (construing Nevada Rules of Evidence).

a lay witness's opinion regarding the identity of the person in the photo may be "particularly appropriate when the witness was familiar with the defendant at the time of the crime and the defendant's appearance has changed by the time of trial." *United States v. Towns*, 913 F.2d 434, 445 (7th Cir.1990).[7] The change in appearance need not be significant. *See id.* (citing *United States v. Jackson*, 688 F.2d 1121 (7th Cir.1982)).

[¶ 10] Of paramount importance in determining whether the witness's opinion will be helpful to the factfinder is the witness's opportunity to observe the defendant in different settings, in different lighting, and under different circumstances than the jury, in such a way that the witness's scrutiny of the photograph at issue and comparison to the witness's knowledge of the defendant's appearance will bring more to the jury's assessment of the facts than they could glean from observation of the defendant in the courtroom. Such testimony will be more helpful to the jury when the "witness has had substantial and sustained contact with the person in the photograph" or when "the defendant's appearance in the photograph is different from his appearance before the jury and the witness is familiar with the defendant as he appears in the photograph." *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir.1993).

[¶ 11] Here, Detective Zacarese testified that he had known Miller for "coming up on two and a half to three years now," and that he had been in Miller's presence for as many as seven hours over that time. Detective Aylward had known Miller long enough to recognize a photo of a "younger version" of Miller. By the time of trial Miller appeared heavier and his hair was white, in contrast to an undisputed photo of Miller, taken in 1993, two years after the events at issue, in which his hair was much darker. Each detective identified Miller as the defendant at trial and identified him as the person depicted in both the 1993 photo recognized by the customer services representative and the 1991 surveillance photos. On these facts, we cannot say that it was obvious error for the court to admit the opinions of lay witnesses.

### B.   Application of Rule 403

[¶ 12] We turn then to the possible prejudice to Miller created by the fact that the witnesses offering the "lay" opinions were known to the jury to be law enforcement officials, specifically, detectives from the Nassau County Police Department in New York.[8] Prejudice means more than merely testimony that is damaging. " 'A party's case is always damaged by evidence that the facts are contrary to his contentions; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one.' " *State v. Hurd*, 360 A.2d 525, 527 n. 5 (Me.1976) (quoting EDWARD W. CLEARY, ED.,

---

7. The few state courts that have addressed the "helpfulness" issue have ruled similarly. In *Rossana*, the Supreme Court of Nevada adopted federal jurisprudence and held that it was not an abuse of discretion to admit the lay opinion testimony of witnesses who knew the defendant at the time of the crime and where the defendant's appearance had since changed. *See Rossana*, 934 P.2d at 1048–49. In *Gibson*, the Court of Appeals of Indiana adopted the reasoning of the Seventh Circuit and allowed the lay opinion testimony of a police officer who had known the defendant since childhood. *See Gibson*, 709 N.E.2d at 15. The Massachusetts Appeals Court, in *Gagnon*, allowed a Canadian police officer who had known the defendants at the time of the crime to identify them in a surveillance photograph, where the defendants had since grown beards and changed hairstyles. *See Gagnon*, 16 Mass.App.Ct. at 127–28, 449 N.E.2d 686.

8. Although the defendant did not challenge the admission of the detectives' opinions, he did ask that the court exclude or limit references to their occupations. We therefore review the admission of evidence regarding their occupations for abuse of discretion. *See State v. Smith*, 675 A.2d 93, 98 (Me.1996).

McCormick's Handbook on the Law of Evidence 439 n. 31 (2d ed.1972)).

[¶ 13] When the witness offering lay opinion testimony regarding a photograph is a member of law enforcement, the trial court should carefully review the possibility that the prejudice to the defendant may outweigh the probative value of the opinion. *See* M.R. Evid. 403.[9] That prejudice may come in the form of extraneous information regarding the defendant's criminal history or may arise simply as a result of improper inferences the jury may draw from the identification of the witness as a member of the law enforcement community. However, when the law enforcement witness will also testify to other facts that require the jury to understand the witness's occupation and the context of those facts, that context may reduce the likelihood that the jury will speculate or draw improper inferences from the identification of the witness as a law enforcement official.[10] To the extent that the jury does not need the specific context of the witness's knowledge, it may be appropriate to exclude all evidence of the employment of the witness.[11] When that evidence is necessary for context, the court may reduce the possibility of prejudice by restricting the State's inquiry in order to avoid the inadvertent admission of other inadmissible information regarding the defendant's contacts with law enforcement.[12] Each such decision is left to the sound discretion of the trial court.

[¶ 14] Here, the court did, in fact, restrict the State's inquiry. Because of a dispute regarding the applicability of Rule 404(b) to parts of the detectives' proposed testimony, the court held a voir dire of each detective.[13] During the voir dire, Detective Zacarese testified that he came to know Miller in the context of his own investigations into check cashing crimes. Detective Aylward testified that he had met Miller when Miller came forward with information about possible murder plots regarding a New York judge and a young woman. Miller had hoped that his cooperation in providing the information would eliminate or reduce charges pending against him, including the charges pending in Maine. In the course of discussing the information with Miller, Aylward asked Miller where he could be located after his release from incarceration in New York. Miller indicated that he might not be immediately released because he was wanted in Maine. He also indicated that he had lived in Augusta, Maine, with a girlfriend at some undisclosed time.

[¶ 15] Following voir dire, the court appropriately limited the State's inquiry into the circumstances of the detectives' meeting with Miller, precluding the detectives from mentioning any hoped-for deals with

---

**9.** *See United States v. Pierce,* 136 F.3d 770, 775–76 (11th Cir.1998); *United States v. Henderson,* 68 F.3d at 327; *United States v. Butcher,* 557 F.2d 666, 669–70 (9th Cir.1977).

**10.** *Compare, e.g., Maddox,* 944 F.2d at 1231 (holding it was proper to allow police officer to give lay opinion testimony as to identity of defendant when officer was involved in the raid by which defendant had been arrested) *with United States v. Calhoun,* 544 F.2d 291, 294–95 (6th Cir.1976) (holding that lay opinion testimony by defendant's parole officer, where officer was called exclusively to identify defendant, was improper).

**11.** *See, e.g., United States v. Allen,* 787 F.2d 933, 937 (4th Cir.1986) (finding no error where there was no evidence from which the jury could infer that the witness was a law enforcement officer), *rev'd on other grounds,* 479 U.S. 1077, 107 S.Ct. 1271, 94 L.Ed.2d 132 (1987).

**12.** *See Maddox,* 944 F.2d at 1230–31 (finding that cross-examination of the lay opinion witness, a police officer, could be had without danger of introducing inadmissible matters prejudicial to the defendant); *Cobleigh,* 75 F.3d at 249 (same).

**13.** The court ultimately determined that the pattern of other check cashing crimes committed by Miller, although possibly demonstrating a "signature-like similarity," citing *State v. Joubert,* 603 A.2d 861 (Me.1992), were insufficiently identical to the crime at issue, and that the possible prejudice to the defendant would outweigh any probative value of evidence of similar crimes. It therefore excluded that evidence.

the FBI as well as any reference to other crimes or investigations of Miller's activities in other states. The court, however, found that Miller's statements regarding his prior residence in Maine were relevant and admissible.[14]

[¶16] At trial, Zacarese was asked if he knew "a person by the name of Donald Miller." In compliance with the court's rulings, Zacarese did not identify the nature of his relationship with Miller or disclose any prior convictions. Similarly, Aylward was simply asked if he knew Miller.[15] Although the court did not restrict Miller's counsel from inquiring about the more benign contacts with the New York police related to Miller's cooperation in an investigation not related to any crime alleged to have been committed by Miller, Miller's counsel preferred to "sanitize" the references to law enforcement contact as much as possible.

[¶ 17] By restricting the testimony of the detectives, the court limited the possible prejudice to Miller. We cannot find on this record that the possible prejudice outweighed the probative value of the opinions. In sum, because the detectives' knowledge of Miller's appearance could reasonably be found by the court to be helpful to the jury, and because the detectives' testimony did not include information regarding other criminal investigations of Miller or his criminal history, the admission of their opinions was neither an abuse of discretion nor was it so highly prejudicial as to virtually deprive Miller of a fair trial. *See Pelletier,* 673 A.2d at 1330.

The entry is:

Judgment affirmed.

---

14. Miller unsuccessfully moved for suppression of those statements. The court found that Miller's statements regarding his residence in Maine were voluntary beyond a reasonable doubt. We do not disturb that ruling.

15. An inadvertent comment by Detective Aylward suggesting that he could better determine the date of certain photographs by checking "the booking date" was immediately met with a specific curative instruction from the court.