2006 ME 70

**Judith A. MITCHELL**

v.

**Francis X. KIELISZEK et al.**

Supreme Judicial Court of Maine.

Argued: June 14, 2006.
Decided: June 15, 2006.

Martica S. Douglas, Esq. (orally), Douglas, Denham, Buccina & Ernst, Portland, for plaintiff.

Mark G. Lavoie, Esq., Christopher C. Taintor, Esq. (orally), Emily A. Bloch, Esq., Norman, Hanson & DeTroy, LLC, (for Francis Kieliszek), Charles A. Harvey Jr., Esq., Harvey & Frank, (for Stephens Memorial Hospital), Philip M. Coffin III, Esq., Thomas Laprade, Esq., Lambert Coffin, Portland, (for Edwin Krajci), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

Majority: SAUFLEY, C.J., and CLIFFORD, DANA, CALKINS, and LEVY, JJ.

Concurrence: ALEXANDER, J.

SAUFLEY, C.J.

[¶ 1] Judith A. Mitchell appeals from a judgment in favor of Dr. Francis X. Kieliszek, Dr. Edwin J. Krajci, and Stephens Memorial Hospital on Mitchell's medical malpractice claim, entered after a jury trial in the Superior Court (Oxford County, *Gorman, J.*). Because we find no prejudicial error or abuse of discretion on any of the issues Mitchell raises on appeal, we affirm the judgment. We discuss only her

---

* Justice Paul L. Rudman sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

argument that the court abused its discretion in limiting her questioning of a nonparty physician during his deposition and at trial.

## I. BACKGROUND

[¶ 2] A few facts in this case are undisputed. On October 1, 1999, Mitchell had a mammogram at Stephens Memorial Hospital in Norway, on a referral from her primary care physician, Dr. Kieliszek. The films were reviewed by Dr. Krajci, a radiologist at the hospital. No follow-up examination was done. Mitchell had another mammogram in August 2000 that was "clearly and unequivocally highly suggestive of malignancy" in her right breast. She subsequently underwent treatment for cancer, including surgery to remove her right breast. The parties' views of the other relevant facts are substantially different.

[¶ 3] According to the defendant doctors and hospital, when Mitchell was undergoing the October 1 mammogram, she could not tolerate adequate compression of the breast to achieve a readable result. In reviewing the film, Krajci was concerned about an "asymmetric density" in the right breast that appeared to have possibly changed from prior years, but concluded that the mammogram was incomplete and nondiagnostic due to inadequate compression. He informally consulted with his partner Dr. Reynold Villedrouin, chief of radiology at the hospital, who agreed that there was inadequate compression for a diagnosis. Krajci examined the films with Kieliszek on October 1, told him of his concerns, and advised him that Mitchell should follow up with an ultrasound examination because she could not tolerate the compression needed for an adequate mammogram.

[¶ 4] According to the defendants, Krajci noted his conclusions on the x-ray jacket on October 1 and in his report prepared on October 4, which was sent to Kieliszek's office. Kieliszek told Mitchell on October 4 that the mammogram had been suboptimal and nondiagnostic, and that she should have an ultrasound. His medical assistant, Cindy Ingram, told Mitchell on October 8 that she should have an ultrasound, and the hospital sent her a letter explaining that the mammogram was incomplete and nondiagnostic. Mitchell told Kieliszek that she did not want to have an ultrasound. She told Ingram that she was reluctant to have an ultrasound but would consider it and would contact Kieliszek's office to schedule the ultrasound if she decided to have one, which she never did.

[¶ 5] According to Mitchell, she experienced severe pain during the mammogram of her right breast, but was never told that the compression was inadequate. Kieliszek told her that her hormone replacement therapy may have made her breasts tender and that she should stop taking the hormones two weeks before the next year's mammogram. Ingram told her that the mammogram showed no change and that Kieliszek said it would be okay for her to have another mammogram in a year. No one told her that the mammogram was incomplete or that she should have an ultrasound.

[¶ 6] Mitchell brought this action in Superior Court in July 2003, alleging, inter alia, medical negligence by Kieliszek, Krajci, and the hospital. The court (Delahanty, J.) entered a standard-form scheduling order later that month that allowed the designation of one expert witness per party per issue, unless the court ordered otherwise for good cause shown. The order required Mitchell to designate her experts within three months (by the end of October 2003) and the defendants to designate theirs within five months. In September 2003, Mitchell took the deposition

of Dr. Villedrouin. Neither she nor any of the defendants had designated Villedrouin as an expert before the deposition. At the beginning of the deposition, Mitchell's attorney stated that an issue had arisen about the scope of the questioning and that she had telephoned the Superior Court and was hoping to have a telephone conference with the presiding justice.

[¶ 7] During the deposition, Villedrouin testified that he did not recall consulting with Krajci about Mitchell's 1999 mammogram films. Mitchell's attorney put a film on a light box and asked Villedrouin, "Are you able to tell from looking at the film that's before you, the 1999 film of the right breast, ... whether there is adequate compression?" Krajci's attorney objected and instructed Villedrouin not to answer. Mitchell's attorney asked several more questions that Krajci's attorney instructed Villedrouin not to answer.[1] The deposition was then interrupted for a telephone conference with the court (*Gorman, J.*), not all of which was transcribed.

[¶ 8] The court sustained the objections, stating, "The doctor is required to answer questions regarding policies and procedures in his department ..., but he is not required to provide any expert testimony.... [I]f it's based upon his experience or education as a radiologist, he is not required to answer." Mitchell's attorney asked whether she could ask Villedrouin, "[I]s there information or data here on this film that enabled you to decide whether or not there is adequacy of compression and if not what additional data would one need?" She argued that the answer would implicate Krajci's credibility. The court

ruled that the question called for an expert opinion and that Villedrouin was not required to answer. Mitchell did not, thereafter, seek to designate Villedrouin as an expert for any purpose.

[¶ 9] Before trial, Krajci filed a motion in limine to prevent Mitchell from asking Villedrouin questions that would require an expert opinion. At the trial in August 2004, the court stated that its ruling from the deposition would stand, and that if Villedrouin testified that he had no recollection of consulting with Krajci on Mitchell's 1999 films, "he'll not be giving any expert testimony as to how he would have read the films." Villedrouin testified, as he had in the deposition, that he did not recall the consultation recounted by Krajci. Mitchell called an expert radiologist who testified that the 1999 film of the right breast had adequate compression and was highly suggestive of malignancy.

[¶ 10] The jury returned a verdict for the defendants on Mitchell's medical negligence claims, and the court entered judgment accordingly. Mitchell then brought this appeal.

## II. DISCUSSION

[¶ 11] We review the court's rulings limiting Mitchell's questioning of Villedrouin during his deposition and during the trial for abuse of discretion. *Searles v. Fleetwood Homes of Pa., Inc.*, 2005 ME 94, ¶ 30, 878 A.2d 509, 518; *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 17, 742 A.2d 933, 940–41. We discuss first whether Mitchell's questions sought to elicit an expert opinion, and then whether there

---

1. These included: "What information do you need in order to determine whether or not there is adequate compression?"; "Does compression tend to be the same reading both bilaterally on a single patient?"; "Does the compression remain fairly constant from year to year in any given patient?"; "Do you agree with me that the 1999 films show a change from the 1998 films?"; and "What clinical term or terms would you use to describe ... this spherical area of density that is marked with a question mark on the picture? Is that a mass?"

was a sufficient basis for barring those questions.

## A. Expert and Lay Opinion Testimony

[¶ 12] Without objection, Villedrouin testified that he did not recall consulting with Krajci about Mitchell's 1999 mammogram. That testimony was in the form of a simple factual statement based directly on his personal knowledge. *See* M.R. Evid. 602. In contrast, the disputed questions propounded by Mitchell did not seek to elicit his personal knowledge or observations. Rather, she sought to have him draw conclusions and to respond with opinions. The questions were not for that reason objectionable, but they must be judged by different standards depending on whether they sought a lay opinion under M.R. Evid. 701 or an expert opinion under M.R. Evid. 702.

[¶ 13] Rule 701 provides:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

An opinion does not meet the standard of Rule 701 if it is "not rationally based wholly and solely on the perceptions [the witness] acquired through his personal observations." *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 992 (Me.1983). "Thus, although an opinion by a lay witness may be permissible if based on his own perception, such perception must be 'adequately grounded on personal knowledge or observation just as would be the case with simple statements of fact.'" *Chrysler Credit*

*Corp. v. Bert Cote's L/A Auto Sales, Inc.*, 1998 ME 53, ¶ 21, 707 A.2d 1311, 1317 (quoting Field & Murray, *Maine Evidence* § 701.1 (4th ed.1997)).

[¶ 14] An expert opinion, by contrast, may be based upon facts "perceived by or made known to the expert at or before the hearing." M.R. Evid. 703. In addition, we have said that "opinion testimony that . . . is not within the common knowledge of an ordinary person . . . may not be given by a lay witness." *State v. Marden*, 673 A.2d 1304, 1311 n. 5 (Me.1996); *accord Chrysler Credit*, 1998 ME 53, ¶ 22, 707 A.2d at 1317 (holding that opinion that was "derived from . . . specialized knowledge . . . and was not within the realm of the ordinary layperson" did not qualify as lay opinion under M.R. Evid. 701). The two categories of expert and lay opinion testimony are thus mutually exclusive: an opinion based on "scientific, technical, or other specialized knowledge," M.R. Evid. 702, cannot be an opinion of a witness "not testifying as an expert," M.R. Evid. 701.[2]

[¶ 15] Mitchell argues that Villedrouin's testimony would not have been an expert opinion because her primary purpose in questioning Villedrouin was to attempt to attack Krajci's credibility, rather than to show that Krajci deviated from the standard of care by misreading the mammogram. She points out that if Villedrouin had testified that it was his opinion that there was adequate compression for a diagnosis, that opinion would have undermined Krajci's testimony that he consulted with Villedrouin in 1999 and Villedrouin agreed with him that there was inadequate compression. That in turn would have

2. This distinction, based on the language of M.R. Evid. 701 and clear in our cases, is now even more explicit in the federal rules. FED. R. EVID. 701 was amended in 2000 to add a requirement that lay opinions are limited to testimony "(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

supported Mitchell's theory that Krajci was lying about the 1999 consultation.

[¶ 16] We need not disagree with Mitchell's factual premises in order to reject her legal argument on this point. Nothing in the evidence rules or our case law suggests that the characterization of an opinion as lay or expert depends on the purpose for which the opinion is offered. Simply put, if an opinion requires specialized knowledge and is not based on personal perception, it is an expert opinion, even if it is offered on the "fact issue" of credibility rather than the "expert issue" of the standard of care.

[¶ 17] It is apparent, then, that Mitchell's questions of Villedrouin did not seek a lay opinion under Rule 701. Because he had no recollection of ever seeing Mitchell's 1999 mammogram, Villedrouin had no personal perceptions on which he could have based an opinion. In answering questions about the adequacy of compression required for a mammogram, he would not have relied on the common knowledge of an ordinary person, but on his education, training, and experience as a radiologist. The trial court thus acted well within its discretion in deciding, both during the deposition and at trial, that Mitchell's questions called for an expert opinion.

B. Exclusion of Villedrouin's Opinion at Trial

[¶ 18] The court would not permit Mitchell to elicit Villedrouin's expert opinion at trial. Mitchell never designated Villedrouin as an expert witness, even though (1) it was unmistakable after the ruling during the deposition that the court believed she was seeking his expert opinion, and (2) the deadline for her to designate her experts fell more than a month after the deposition. Even after the deadline passed, Mitchell had over nine months before the trial during which she could

have filed a motion asking the court to allow a late expert designation. Instead, after the deposition she did not address the issue of Villedrouin's testimony again until, less than two weeks before the trial, she filed an opposition to Krajci's motion in limine.

[¶ 19] We have consistently held that it is an appropriate exercise of the trial court's discretion to exclude expert opinion testimony when the party seeking to elicit the opinion failed to designate the witness as an expert, or failed to do so in a timely fashion in accordance with pretrial scheduling orders. *Moody v. Haymarket Assocs.*, 1999 ME 17, ¶ 8, 723 A.2d 874, 876; *Pitt v. Frawley*, 1999 ME 5, ¶ 9, 722 A.2d 358, 361; *Black v. Ward*, 633 A.2d 81, 83 (Me.1993); *Stanley v. DeCesere*, 540 A.2d 767, 769 (Me.1988). Indeed, when there has been a complete failure to designate an expert witness, we have concluded that it is an abuse of discretion to allow a mid-trial designation of an expert or to decline to exclude such expert testimony at trial. *See Chrysler Credit*, 1998 ME 53, ¶ 23, 707 A.2d at 1317–18; *Spickler v. York*, 566 A.2d 1385, 1388–89 (Me.1989). These precedents are controlling here. Considering the ample opportunity that Mitchell had to designate Villedrouin as an expert witness and her decision not to do so, the court did not abuse its discretion in preventing her from eliciting his expert opinion at trial.

C. Exclusion of Villedrouin's Opinion at Deposition

[¶ 20] We need not decide whether the same limitation on Mitchell's questioning of Villedrouin was an abuse of discretion in the context of his deposition. Assuming arguendo that the court should have required Villedrouin to answer all of Mitchell's deposition questions, the error was harmless. Even if Mitchell had been

permitted to elicit Villedrouin's expert opinion during his deposition, she could not have done so at trial because, as we have explained, she never designated him as an expert witness. She therefore suffered no prejudice from the court's deposition ruling. It is highly probable that any error did not affect the outcome of the trial. *See Corey*, 1999 ME 196, ¶ 17, 742 A.2d at 940–41; *Boccaleri v. Me. Med. Ctr.*, 534 A.2d 671, 673 (Me.1987).

The entry is:

Judgment affirmed.

ALEXANDER, J., concurring.

[¶ 21] We want to encourage trial courts to address and rule promptly on discovery disputes, even though the court may have to rule after a short discussion and based on limited information. M.R. Civ. P. 26(g). Our standard of review of such rulings necessarily must be very deferential. Because the trial court's ruling on the deposition dispute here did not exceed the bounds of the court's discretion, based on the information and arguments presented to the court at the time, I concur in the result.

[¶ 22] I write separately because the more deliberate consideration permitted by appellate review demonstrates that the defendants' discovery tactics involved a violation of M.R. Civ. P. 30(d)(1) and an incorrect premise that the plaintiff was seeking to use Dr. Villedrouin as an expert. The discovery issue is not resolved by examining the fine distinctions between expert and lay opinion testimony, as the Court's opinion suggests. The relevance of this discovery was credibility, not expertise. However, the Court's opinion affirming exclusion of discovery relevant to witness credibility should not be read as approving the defendants' discovery tactics. Because the defendants' violation of M.R. Civ. P. 30(d)(1) was not called to the

trial court's attention, objection to the defendants' tactics was not properly presented or preserved.

[¶ 23] More detail about the history of this case and our governing rules is necessary to put the Court's opinion today in proper context.

[¶ 24] Part of the evidence supporting the defendants' position was Dr. Krajci's claim that he had shown the mammogram to his partner Dr. Villedrouin, and that Dr. Villedrouin had reviewed the mammogram and agreed with him that it could not be adequately read and further follow-up by Mitchell was required. In pretrial discovery, Mitchell deposed Dr. Villedrouin. When asked about the consultation reported by Dr. Krajci, Dr. Villedrouin claimed no memory of the consultation or of reviewing Mitchell's mammogram. Mitchell's counsel asked Dr. Villedrouin about the circumstances and practices for reading mammograms and consulting on mammograms. Mitchell also attempted to ask Dr. Villedrouin to read the mammogram.

[¶ 25] The defendants' counsel objected to these questions as being improper expert questions directed to a fact witness. Rather than follow customary deposition practice of objecting to questions, but then allowing the deponent to answer the questions, *see* M.R. Civ. P. 30(c), (d)(1), one defendant's attorney directed Dr. Villedrouin not to answer the questions. The court was then called and had a conversation in which each party outlined their position. Mitchell's counsel indicated that one of the purposes of the examination was to seek evidence regarding Dr. Krajci's credibility. But counsel did not make it clear that her purpose in asking the questions was to determine if Dr. Villedrouin would make the same statements that Dr. Krajci had claimed that Dr. Villedrouin had made after reviewing the mammogram

at Dr. Krajci's request. The court then sustained the defendants' objections to questioning of Dr. Villedrouin in these areas.

[¶ 26] Discovery has the dual purpose of assisting in identifying admissible evidence and in identifying further areas for inquiry that may lead to development of admissible evidence. Thus, M.R. Civ. P. 26(b)(1), regarding the proper scope of discovery states:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

[¶ 27] During depositions, when questions are asked that are believed to be objectionable, the proper practice is that, after an objectionable question is asked, the objection is stated on the record and thus preserved, but then the question is answered. The governing rule, M.R. Civ. P. 30(c), addressing depositions, directs that: "Evidence objected to shall be taken subject to the objections." This practice limits unnecessary disruption and delay in depositions, while preserving objections for later judicial review.

[¶ 28] Deposition objection practice is also governed by M.R. Civ. P. 30(d)(1) which states that:

Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive manner. A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3).

[¶ 29] The sum of the Rule 30(d)(1) requirements is that: (1) deposition objections must be stated concisely, and not be argumentative or suggestive; and (2) parties may instruct deponents not to answer questions only when necessary to (i) preserve a privilege; (ii) enforce a limitation on evidence previously stated by the court; or (iii) present a motion pursuant to M.R. Civ. P. 30(d)(3). Rule 30(d)(3) authorizes resort to the court for a ruling, but only if the questioning is being conducted "in bad faith" or in a manner to unreasonably "annoy, embarrass, or oppress" the deponent. M.R. Civ. P. 30(d)(3).

[¶ 30] Rule 30(d)(1) was adopted in its present form in 1999 to track a similar amendment to the Federal Rules of Civil Procedure. The advisory committee note to the 1999 amendment emphasizes its dual purpose.

The amendment proscribes "speaking objections" at depositions that either burden the record with argument of counsel or suggest responses to the witness. The new subdivision also permits an instruction to a deponent not to answer a question only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court or to present a motion concerning the issue. Lawyers frequently complain that opposing counsel instruct witnesses not to answer questions on the grounds of relevance or other improper bases. The intent of the rule is to eliminate this practice by providing that the only prop-

er occasion for an instruction not to answer is one in which the giving of the answer would make the invocation of a privilege or a limitation imposed by the court an empty exercise.

M.R. Civ. P. 30 advisory committee's note to 1999 amend., Me. Rptr., 716–24 A.2d L.

[¶ 31] Federal courts, working under a similarly worded rule, have stated that where there is no claim of privilege and no showing that a deposition was being conducted in bad faith or in a manner to unreasonably annoy, embarrass, or oppress a deponent, instructing a deponent not to answer a question is not proper practice. *See Ralston Purina Co. v. McFarland,* 550 F.2d 967, 973–74 (4th Cir. 1977); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B,* 230 F.R.D. 398, 420–22 (D.Md.2005); *In re Stratosphere Corp. Sec. Litig.,* 182 F.R.D. 614, 618–19 (D.Nev.1998); *Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D.Neb.1995); *Hall v. Clifton Precision,* 150 F.R.D. 525, 531 (E.D.Pa.1993). Such practices may subject counsel to sanctions. *See Boyd v. Univ. of Md. Med. Sys.,* 173 F.R.D. 143, 147–49 (D.Md.1997).

[¶ 32] In this case, there was no justification for directing Dr. Villedrouin not to answer questions regarding the circumstances of Dr. Krajci's reported consultation with him, and the accuracy of Dr. Krajci's statements about Dr. Villedrouin's conclusions regarding the readability of the mammogram. All such inquires were designed to elicit relevant evidence or to lead to identification of relevant evidence. M.R. Civ. P. 26(b)(1). Although Dr. Villedrouin claimed no memory of the relevant consultation, to test his and Dr. Krajci's credibility, he could have been questioned about his ability to read the specific mammogram in this case. If Dr. Villedrouin had demonstrated some capacity to read or gain information from the mammogram, that capacity would have affected the credibility of Dr. Krajci's claims that the mammogram was not readable and that he had consulted with Dr. Villedrouin and Dr. Villedrouin had agreed that the mammogram was not readable.

[¶ 33] While the questions asked of Dr. Villedrouin certainly called upon his expertise as a radiologist, they were directed to eliciting evidence about the fact issue of credibility of Dr. Krajci's claim that the mammogram was unreadable and that he had recommended that Mitchell return for further tests. Defense counsel should have allowed the witness to answer the questions, and the direction not to answer was an improper discovery practice, prohibited by M.R. Civ. P. 30(d)(1). Having been denied the necessary discovery, Mitchell's counsel was in no position to make an offer of proof at trial, M.R. Evid. 103(a)(2), regarding what relevant evidence an examination of Dr. Villedrouin might yield.

[¶ 34] Trial courts should not approve deposition counsel's direction to witnesses not to answer questions, except for the very limited reasons allowed by M.R. Civ. P. 30(d)(1). Counsel reading the Court's opinion should not assume that because discovery tactics in violation of our rules succeeded in this case, similar tactics, on different facts and in a different case, will merit similar approval in the future.