MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2017 ME 10
Docket:        Sag-16-48
Argued:        November 8, 2016
Decided:       January 17, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

# STATE OF MAINE

v.

# RAYMOND N. ROURKE III

HJELM, J.

[¶1]  Raymond N. Rourke III appeals from a judgment of conviction for operating under the influence with one prior conviction (Class D), 29-A M.R.S. § 2411(1-A)(B)(1) (2016), entered in the trial court (Sagadahoc County, *Horton, J.*) after a jury trial.  Rourke argues that the court abused its discretion by excluding expert testimony that certain chemicals, if present in Rourke's system, could have resulted in a falsely elevated breath-alcohol test.[1]  We affirm the judgment.

---

[1]  We are unpersuaded by Rourke's additional argument, to the extent that it is preserved, that overlapping testimony from two law enforcement officers about field sobriety tests administered to Rourke was unfairly prejudicial or needlessly cumulative and therefore subject to exclusion pursuant to M.R. Evid. 403.  We do not address that contention further.

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt.  *See State v. Fay*, 2015 ME 160, ¶ 2, 130 A.3d 364.

[¶3]  On August 2, 2014, around 2:00 a.m., Lieutenant Frederick M. Dunn of the Topsham Police Department stopped a vehicle for speeding. Dunn smelled the odor of alcohol coming from the car and observed that the driver, Raymond N. Rourke III, had bloodshot eyes.  Rourke acknowledged that he had been drinking wine earlier that evening.  After a second officer arrived, Dunn administered three field sobriety tests, including the horizontal gaze nystagmus (HGN) test.  At Dunn's request, the second officer repeated the HGN test.  Rourke showed signs of impairment during the field sobriety tests, and Dunn arrested him for operating under the influence.

[¶4]  After transporting Rourke to the police station, Dunn, who is certified to operate breath-alcohol testing equipment, obtained a breath sample from Rourke using an Intoxilyzer 8000 instrument.  A display on the Intoxilyzer indicated "radio frequency interference," and the instrument shut down.  Dunn restarted the Intoxilyzer, and Rourke provided two more breath samples.  This time, the Intoxilyzer did not produce an error message, but

rather reported a final result of 0.11 grams of alcohol per 210 liters of breath.[2] While chatting with Dunn at the police station, Rourke mentioned that he was a mechanic and had been working at his place of employment that evening before the traffic stop.

[¶5]  In early September 2014, Rourke was charged by complaint with one count of operating under the influence with one prior conviction (Class D), 29-A M.R.S. § 2411(1-A)(B)(1).[3]  He pleaded not guilty to the charge. A jury trial was held over two days in January 2016, where the parties presented evidence consistent with the facts described above.

[¶6]  During the trial, Rourke sought to present expert testimony from Patrick Demers, who has training and experience in pharmacy and forensic chemistry.  In a report that Rourke had provided to the State before trial, *see* M.R.U. Crim. P. 16A(b)(2), Demers asserted that "for several hours prior" to Rourke's arrest, Rourke had been working with automotive chemicals containing hydrocarbons, ketones, and toluene, which, when inhaled, can "result in a falsely elevated reading on [an] Intoxilyzer."  The State filed a pretrial motion to exclude Demers's testimony pursuant to M.R. Evid. 403,

---

[2]  A person is guilty of OUI if he or she operates a motor vehicle "[w]hile having an alcohol level of 0.08 grams or more of alcohol per . . . 210 liters of breath."  29-A M.R.S. § 2411(1-A)(A)(2) (2016).

[3]  At trial, the parties stipulated that Rourke had one prior OUI conviction within the past ten years.

arguing that Demers had no basis to testify as to whether hydrocarbons or similar chemicals were present in Rourke's body when he took the breath test.

[¶7]  At trial, after conducting a voir dire examination of Demers outside of the jury's presence, *see* M.R. Evid. 705(b), the court granted the State's motion to exclude Demers's testimony about the possible effect of interferent chemicals on Rourke's breath-alcohol test.  As the basis for that decision, the court found, among other things, that although Demers had conducted laboratory experiments that demonstrated a correlation between exposure to hydrocarbon chemicals and a positive breath-test result, the experiments involved an Intoxilyzer model that predated the one used in this case.  The court also determined that there was only "generalized evidence" about the nature and extent of Rourke's exposure to interferent chemicals, such that a jury could not reasonably determine "the level of [chemicals] in [Rourke's] . . . breath or the rate at which he might have been emitting" them when the Intoxilyzer test was administered.  The court concluded, based on those findings, that the probative value of Demers's proffered opinion testimony was "drastically outweighed by [its] lack of reliability . . . and the potential to confuse the jury."[4]

---

[4]  Later in the trial, without objection, Rourke presented testimony from Demers on other topics, including the mechanics and limitations of the Intoxilyzer instrument.

[¶8]    The jury ultimately returned a guilty verdict, and the court sentenced Rourke to a jail term of ninety days, with all but seven days suspended, followed by one year of probation; a $700 fine; and a three-year license suspension.  *See* 29-A M.R.S. § 2411(5)(B) (2016).  Rourke timely appealed. *See* M.R. App. P. 2(b)(2)(A); 15 M.R.S. § 2115 (2016).

## II.  DISCUSSION

[¶9]    Rourke argues that the court abused its discretion by excluding Demers's expert opinion that certain chemicals, if present in Rourke's system, could have compromised the reliability of his breath-alcohol test result.

[¶10]    Although the court stated that it was excluding Demers's testimony pursuant to Rule 403, which was the primary basis for the State's motion in limine and argument during voir dire, the court's reasoning also implicates M.R. Evid. 702.  That Rule provides, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or to determine a fact in issue." *Id.*  We review a ruling on the admissibility of expert testimony for an abuse of discretion. *See State v. Diana*, 2014 ME 45, ¶ 35, 89 A.3d 132; *State v. Ericson*, 2011 ME 28, ¶ 12, 13 A.3d 777.

6

[¶11]  For evidence to be admissible pursuant to Rule 702, a court must find that it "is relevant in accordance with M.R. Evid. 401, and . . . will assist the trier of fact in understanding the evidence or determining a fact in issue." *Ericson*, 2011 ME 28, ¶ 11, 13 A.3d 777 (quotation marks omitted).  Before engaging in this inquiry, however, a court must make a preliminary finding that the testimony is reliable.  *See id.*  Indicia of reliability include "whether any studies tendered in support of the testimony are based on facts similar to those at issue; . . . whether the hypothesis of the testimony has been subject to peer review; . . . [and] whether an expert's conclusion has been tailored to the facts of the case."  *Id.* ¶ 12 (quotation marks omitted).  Expert testimony that is not reliable has "no probative value," *id.* ¶ 14, and cannot "satisfy the evidentiary requirements of relevance and helpfulness, and of avoidance of prejudice to [the opposing party] or confusion of the fact-finder," *State v. Boutilier*, 426 A.2d 876, 879 (Me. 1981) (citing M.R. Evid. 402, 403, 702).

[¶12]  For the following two reasons, we conclude that given the particular factual circumstances in this case, the court acted within the bounds of its discretion by excluding Demers's testimony about the effect of interferent chemicals on breath-testing equipment and test results produced by that equipment.

[¶13] First, the "studies tendered in support" of Demers's opinion were not "based on facts similar to those at issue" here. *Ericson*, 2011 ME 28, ¶ 12, 13 A.3d 777. Demers testified during voir dire that his conclusion about the effect of hydrocarbon chemicals on breath-testing equipment was largely based on laboratory experiments he had conducted at least twenty-five years earlier, where subjects produced positive breath-alcohol test results after inhaling paint thinner. As the court found, however, Demers's experiments did not involve the Intoxilyzer 8000, which was the device used in this case.[5] The court reasonably determined that it could not assume that the Intoxilyzer 8000 reacted to hydrocarbons in the same way as the model used in Demers's experiments.

[¶14] Further, although not expressly cited by the court in making its ruling, the court was presented with additional evidence—beyond the differences in testing equipment—that supported its basic reasoning that Demers's analysis was not based on facts and circumstances similar to those at issue here. For example, Demers's experiments involved the intentional inhalation of paint thinner in a laboratory, rather than ambient exposure to

---

[5] Demers testified during voir dire that his experiments were based on the Intoxilyzer 4011 and 5000 models. In testimony presented after the court made its ruling on the State's motion in limine, Demers acknowledged that he does not own, is not certified in, and has never even operated an Intoxilyzer 8000.

8

chemicals in an industrial environment. Although Demers asserted that there is literature that supports his hypothesis that there is a correlation between industrial exposure to hydrocarbons and a positive breath-alcohol test, he was unable to identify the nature of the literature or whether it had been subject to peer review.[6]

[¶15] These material differences between the studies that formed the basis for Demers's opinion and the facts of this case, combined with the absence of meaningful evidence regarding the reliability of the authority he relied on, are factors that by themselves support the court's discretionary decision to exclude Demers's expert testimony. *See Ericson*, 2011 ME 28, ¶ 12, 13 A.3d 777.

[¶16] Second, Rourke's offer of proof was not sufficient to demonstrate the relevance of Demers's opinion to the facts at issue in the case, because the proffer did not did not include a description of the degree to which Rourke was exposed to hydrocarbon chemicals. Demers offered an opinion that *if*

---

[6] As further support for his hypothesis about the effect of ambient exposure to hydrocarbon chemicals, Demers referred anecdotally to an incident where a worker produced a positive breath-alcohol test after cleaning up a paint solvent spill at a sewer treatment plant. Demers acknowledged, however, that in that incident officials merely "*surmised* that it was hydrocarbon material that [a]ffected the breath-testing device." (Emphasis added.) Accordingly, although the incident involved circumstances that may have been similar to those in this case, the evidence was ultimately too speculative to serve as a reliable basis for Demers's expert opinion, and this anecdotal evidence did not render the court's order erroneous. *Cf. State v. Tellier*, 526 A.2d 941, 944 (Me. 1987) (stating that expert testimony was properly excluded when the testimony "was so . . . speculative that its relevance and probative value was virtually nil.").

hydrocarbons or similar chemicals were in Rourke's system, Demers "would expect to see a contribution to a blood[-]alcohol test result." Because Demers's opinion was framed as a hypothetical, it could be relevant only if it were supported by evidence that demonstrated the fact or extent of Rourke's exposure to hydrocarbons—in other words, evidence that linked Demers's hypothetical opinion to Rourke. *See State v. Hatt*, 2002 ME 166, ¶ 9, 810 A.2d 415 (stating that expert testimony was properly excluded when the proponent's offer of proof was insufficient to demonstrate the testimony's relevance); *State v. Collin*, 441 A.2d 693, 695-96 (Me. 1982) (stating that expert testimony was properly excluded when there was no evidence in the record, or any offer of proof, linking the testimony to the defendant).

[¶17] Although, here, the court was presented with Dunn's testimony that Rourke had been working as a mechanic on the evening before the traffic stop, there was neither testimony nor a proper offer of proof describing Rourke's workspace or the types of chemicals he regularly used, if any.[7] As the court correctly determined, the record contains—at best—only "generalized evidence" that Rourke worked in an environment where

---

[7] For example, during voir dire, Rourke's attorney asserted that he had photographs depicting "the scene of the shop" where Rourke worked. Because the proffer did not demonstrate a foundational basis necessary for the admission of the photographs, however, his assertion does not constitute a proper offer of proof. *See State v. Williams*, 462 A.2d 491, 492 (Me. 1983) ("An offer of proof must not only detail the proposed [evidence] but must also support the admissibility of that [evidence].").

hydrocarbons could have been present. In the absence of an adequate offer of proof linking Demers's opinion with Rourke, the court was entitled to conclude that the opinion was not relevant and would not assist the jury either in its evaluation of Rourke's breath-alcohol test results or in its determination of whether he was impaired. *See Hatt*, 2002 ME 166, ¶ 9, 810 A.2d 415; *Collin*, 441 A.2d at 695-96. The court therefore did not abuse its discretion by excluding Demers's expert opinion based on its separate determination that there was only "generalized evidence" about the extent of Rourke's exposure to chemicals that could have affected his breath test.

[¶18] In sum, the court did not abuse its discretion by excluding Demers's testimony about the effect of hydrocarbons on the breath-alcohol test results because there was not a sufficient factual foundation to link Demers's testimony with the facts of this case, as shown by evidence of Demers's lack of familiarity with the Intoxilyzer 8000 instrument, the difference between the circumstances of Demers's experiments and the circumstances at issue here, and the absence of a sufficient offer of proof regarding Rourke's alleged exposure to hydrocarbons.[8]

---

[8] Further, contrary to Rourke's argument, the exclusion of Demers's expert opinion pursuant to the Maine Rules of Evidence did not infringe on Rourke's Sixth Amendment right to compulsory process under the circumstances in this case. *See State v. Cross*, 1999 ME 95, ¶ 7, 732 A.2d 278 ("[A] [d]efendant's Sixth Amendment right to compulsory process does not provide him with 'an

The entry is:

Judgment affirmed.

---

Christopher Ledwick, Esq. (orally), Brunswick, for appellant Raymond N. Rourke III

Jonathan R. Liberman, Dep. Dist. Atty. (orally), District Attorney's Office, Bath, for appellee State of Maine

Sagadahoc County Unified Criminal Docket docket number CR-2014-746
FOR CLERK REFERENCE ONLY

---

unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" (quoting *Taylor v. Illinois,* 484 U.S. 400, 410 (1988))*.*