MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2018 ME 152
Docket:        Kno-18-129
Argued:        November 6, 2018
Decided:       November 15, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

EARL GAMMON et al.

v.

ROBIN E. BOGGS et al.

PER CURIAM

[¶1]  In this dispute over the location of the boundary between the land of Earl and Mary Gammon and the land of Leland E. Boggs II, Leland and Robin E. Boggs[1] appeal from a judgment entered by the Superior Court (Knox County, *Stokes, J.*) declaring the location of that boundary line.  The Boggses contend that the court erred by (1) denying their motion to continue when they were unprepared for trial; (2) restricting a previously designated expert to providing rebuttal testimony when that expert had withdrawn and they had designated a different expert for trial; (3) finding that, in addition to having proved record ownership of the land in dispute, the Gammons had alternatively

---

    [1]  Robin E. Boggs is the son of Leland Boggs II.  He is a party to this case because he lives on the parcel of his father's land that is the subject of this dispute.

2

proved title by adverse possession; and (4) denying the Boggses' motion for additional findings of fact pursuant to M.R. Civ. P. 52(b).

[¶2]   The points on appeal generally address discretionary decisions made by the trial court in its management of the proceeding.   Review of the record, the docket entries, the several decisions of the trial court, and the briefs of the parties on appeal demonstrates that the litigation was highly contentious. Because of lack of cooperation between the parties, delays by the parties in preparing and providing discovery material, and a change of counsel by the Boggses, the trial court, on several occasions, appropriately exercised its discretion to grant requests to continue previously set trial dates and discovery deadlines.

[¶3]  The court set a final trial date of December 19, 2016.  Trial was held over six days, December 19-21, 2016, and February 1-3, 2017.  Reflecting its experience over the course of the litigation, the court, in its opinion, observed:

> It was obvious to the court during the trial of this matter that the Gammons' and Boggs' families held strong feelings of antipathy towards each other.  The court was dismayed by the fact that the attorneys for the parties appeared to have assumed that antipathy towards each other.  Indeed, the court felt compelled on more than one occasion to remind counsel of their professional responsibility to conduct themselves in a civil and appropriate manner during the trial.

[¶4]  Commendably, the court had kept the case on track through considerable effort involving hearings, telephone conferences, and written orders.

[¶5]  In his brief on appeal, after acknowledging the trial court's accommodation of some of the points argued in the Boggses' post-judgment motions, the Boggses' counsel argues that "[t]his still leaves Boggs disadvantaged by, after a noisy withdrawal by his original attorney just before trial, having to proceed without an expert surveyor witness and with replacement counsel unprepared to try this boundary dispute."  Later in the brief, counsel asserts that "Boggs was forced to proceed unprepared through no fault of Boggs" and that, after his previous expert withdrew, counsel was compelled "to scramble to find a replacement expert, . . . who . . . never had time to prepare."

[¶6]  Such claims about a trial court's case management practices, taken on their face and out of context—as such claims are sometimes asserted—can make a trial court's case management efforts seem callous and in disregard of the trial court's obligation to try to achieve justice through due process of law. Adding context may—as here—demonstrate a very different series of events.

4

[¶7]  The docket entries reflect that the complaint in this matter was filed on February 26, 2015.  The Boggses' latest trial counsel, who continues as counsel on appeal, first entered his appearance in the case on May 2, 2016[2]— seven and one-half months before the actual first day of trial, certainly not "just before trial," as counsel asserts in his brief to us.  In fact, because prior counsel had withdrawn, the court had removed the case from the May trial list and continued the trial, ultimately setting the December trial date.

[¶8]  The record further reflects that by June 17, 2016, six months before the first day of trial, at the Boggses' request and over objection from the Gammons, the Boggses' counsel had identified the replacement expert— although counsel's brief to us indicates that counsel had some concern as to whether the expert chosen would or could adequately prepare for trial in the ensuing six months.  It is not at all clear why six months would not be enough time to retain and prepare an expert to testify in a boundary dispute case, and counsel's claims to the contrary and his placement of blame on the trial court are neither persuasive nor credible.

---

[2]  At oral argument, the Boggses' counsel indicated that he entered his appearance on April 27, 2016.

[¶9]  Contrary to the Boggses' contentions, the trial court committed no error, nor did it abuse its discretion, either in its case management orders or in its findings and conclusions.  First, after the case had been pending for nearly twenty-two months and the court had already granted the Boggses' several requests for continuances and enlargements of time, the Boggses' continued lack of preparation was not a substantial reason to allow further delay.  *See Fox Island Granite Co. v. Am. Granite Mfrs., Inc.*, 2006 ME 14, ¶¶ 4-8, 890 A.2d 700.

[¶10]  Second, the Boggses' late attempt to use their prior, withdrawn, expert witness for nonrebuttal purposes when the replacement expert had been designated was in contravention of the court's scheduling order, which allowed only one expert per issue, and it would have resulted in unfair prejudice to the Gammons.  *See* M.R. Civ. P. 16(d) (authorizing the court to sanction a party for failing to comply with the requirements governing pretrial procedure); M.R. Evid. 403; *Spickler v. York*, 566 A.2d 1385, 1389 (Me. 1989).

[¶11]  Third, the court's judgment contains adequate findings of fact to support its alternative finding that the Gammons established title by adverse possession.  *See Harvey v. Furrow*, 2014 ME 149, ¶¶ 11-19, 107 A.3d 604.

6

[¶12]  Fourth and finally, the court's judgment provides a sufficient basis to inform the parties of its reasoning and allows for informed appellate review; it was, therefore, not an abuse of discretion for the court to deny the Boggses' motion for additional findings.  Their proposed findings were simply attempts to reargue points or have the court provide further explanation of its decision. *See Wandishin v. Wandishin*, 2009 ME 73, ¶ 19, 976 A.2d 949; *Sewall v. Saritvanich*, 1999 ME 46, ¶¶ 9-10, 726 A.2d 224.

[¶13]  We again remind counsel that hyperbole, ad hominem attacks, and a manufactured sense of outrage, while possibly desired by clients, are not only routinely unpersuasive, but may in fact detract from any actual solid legal argument made by counsel.

The entry is:

Judgment affirmed.

---

Robert W. Kline, Esq. (orally), Kline Law Offices LLC, Portland, for appellants Robin E. Boggs and Leland E. Boggs II

Patrick J. Mellor, Esq. (orally), Strout & Payson, P.A., Rockland, for appellees Earl Gammon and Mary Gammon

Knox County Superior Court docket number RE-2015-5