MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 37
Docket:        Lin-18-61
Argued:        October 25, 2018
Decided:       March 7, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Majority:      SAUFLEY, C.J., and MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Concurrence:   ALEXANDER, J.

STATE OF MAINE

v.

JOHN M. BURBANK

HJELM, J.

[¶1]   John M. Burbank appeals from a judgment convicting him of
operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A) (2018), and
operating beyond a license condition or restriction (Class E), 29-A M.R.S.
§ 1251(1)(B) (2018), issued by the trial court (Lincoln County, *Billings, J.*) after
Burbank entered a conditional plea of nolo contendere to each charge, *see*
M.R.U. Crim. P. 11(a)(2).   Burbank contends that the trial court erred by
excluding testimony of two witnesses whom Burbank had designated—
seriatim—as experts to testify that at the time of his arrest he had a condition
known as "auto-brewery syndrome,"[1] a phenomenon associated with the

---

[1] Auto-brewery syndrome is also called "gut-fermentation syndrome."

2

production of alcohol within the body itself under certain circumstances. The record supports the court's findings that Burbank's first witness was not sufficiently qualified to testify about auto-brewery syndrome generally and did not have a sufficient basis to express an opinion that Burbank had that condition at the time of his arrest or that any such condition accounted for the blood alcohol level detected in a breath test administered after he was arrested. Additionally, the trial court acted within its discretion by excluding testimony of Burbank's second proposed expert witness because Burbank designated her far too belatedly. We therefore affirm the judgment.

## I. CASE HISTORY

[¶2]  On August 9, 2016, Burbank was arrested and charged with operating under the influence and operating beyond a license condition or restriction.[2]  He pleaded not guilty to both charges, and the court scheduled a jury trial to be held in August of 2017. During the pretrial proceedings, Burbank designated an expert witness—a toxicologist to testify that, at the time of his arrest, Burbank was suffering from auto-brewery syndrome, a condition

---

[2] The issues on appeal regarding admissibility of expert testimony were addressed and resolved by pretrial motions that centered on the qualifications of the first proffered expert witness and the relevance of her testimony to this case, and on the timing of Burbank's designation of the second expert.  Therefore, the record contains no substantive evidence regarding the circumstances of Burbank's stop and arrest.

associated with the endogenous production of alcohol that could be detected in a breath alcohol test. The State filed a pretrial motion requesting that the court hold a hearing pursuant to Maine Rule of Evidence 104 to determine whether the expert's testimony was admissible, *see* M.R. Evid. 702.

[¶3] The court postponed the trial and, in December of 2017, held a hearing on the admissibility of the expert's testimony. At the conclusion of the hearing, where the court heard testimony from several witnesses, including Burbank's designated expert witness, the court orally ruled that the proffered expert testimony was not admissible. The court first concluded that, although auto-brewery syndrome may well exist as a physiological phenomenon, Burbank's witness was not qualified to testify about it because she had no training or work experience relating to the condition and instead relied only on a limited number of case studies in this area of science, which is still emerging and is not the subject of much literature. The court also concluded that, because significant differences existed between Burbank's purported condition and that of patients with auto-brewery syndrome as revealed in the case studies, the witness's testimony did not sufficiently relate the syndrome to Burbank and to matters pertinent to this case.

4

[¶4]  After the court excluded the first witness's testimony in December of 2017, Burbank designated a *second* expert on January 10, 2018, to testify that his alleged blood alcohol level at the time of his arrest was caused by auto-brewery syndrome.  The State promptly filed a motion in limine, requesting that the court exclude the second expert's testimony as a sanction pursuant to M.R.U. Crim. P. 16A(d).  In its motion, the State asserted that despite its multiple requests to Burbank, starting as early as November of 2016, for the production of an expert report and other expert-related material, Burbank had failed to provide that material at least fourteen days before the date set for the dispositional conference, which was January 9, 2017—more than a year earlier—as required by M.R.U. Crim. P. 16A(b)(2).  The court granted the State's motion, issued an order excluding testimony from Burbank's second designated expert witness, and scheduled the jury trial to be held about two weeks later.

[¶5]  After moving unsuccessfully for the court to reconsider the exclusion order and on the day before the jury trial was to be held, Burbank entered conditional pleas of nolo contendere to both charges, reserving his right to appeal and challenge the orders excluding testimony of the two proffered experts.  *See* M.R.U. Crim. P. 11(a)(2).  The court accepted Burbank's

pleas and sentenced him to seven days in jail and a $750 fine on the OUI charge, with a concurrent jail sentence on the charge of operating beyond a license restriction or condition. This appeal followed. *See* 15 M.R.S. § 2115 (2018).

## II. LEGAL ANALYSIS

[¶6]  Burbank first asserts that the court erred by excluding the testimony of the first witness based on its alternative conclusions, cast as foundational matters, that she was not sufficiently qualified to render expert testimony on the medical condition of auto-brewery syndrome and that Burbank had not adequately related the basis of her opinion to the facts of this case.[3] He next contends that the court erred by excluding the testimony of his second proffered expert witness because of the late designation. Burbank finally asserts that the exclusion orders operated to deprive him of the constitutional right to present a defense. We address these challenges in turn.

---

[3] At the beginning of oral argument on this appeal, Burbank seemed to retreat from the claim, which he had fully briefed, that the court erred by excluding the first proffered expert's testimony, when he stated that "in a sense we can forget about [that issue] . . . ; it's kind of beside the point now because [Burbank] found a better expert." Later during argument, however, Burbank told us that "there is no concession in regards to the first assignment of error. . . . I want to make sure [that issue is] alive." Because Burbank has not unambiguously abandoned the claim relating to the exclusion of testimony from the first witness, we proceed to address the merits of that contention.

6

A. The First Expert's Testimony

[¶7] Maine Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or to determine a fact in issue." We review the court's ruling on the admissibility of expert testimony for an abuse of discretion. *State v. Rourke*, 2017 ME 10, ¶ 10, 154 A.3d 127; *State v. Diana*, 2014 ME 45, ¶ 35, 89 A.3d 132.

[¶8] For expert testimony to be admissible under Rule 702, "the trial court must determine that the testimony (1) is relevant in accordance with M.R. Evid. 401, and (2) will assist the trier of fact in understanding the evidence or determining a fact at issue." *State v. Ericson*, 2011 ME 28, ¶ 11, 13 A.3d 777 (quotation marks omitted); *see also State v. Williams*, 388 A.2d 500, 504 (Me. 1978). Expert testimony can be relevant only if it is reliable, *see Ericson*, 2011 ME 28, ¶¶ 12, 14, 13 A.3d 777, and so, for the evidence to be admissible, the court must make a preliminary determination that the proponent has presented a sufficient demonstration of reliability, *see Rourke*, 2017 ME 10, ¶ 11, 154 A.3d 127.[4] Indicia of reliability include "whether any studies

---

[4] Burbank asserts on appeal that "[l]ike 'credibility,' the 'reliability' of evidence is a factual finding" reserved only for the fact-finder. To the contrary, Maine Rule of Evidence 104(a) requires the court

tendered in support of the testimony are based on facts similar to those at issue; . . . whether an expert's conclusion has been tailored to the facts of the case; . . . [and] the nature of the expert's qualifications." *Ericson*, 2011 ME 28, ¶ 12, 13 A.3d 777 (quotation marks omitted).

[¶9]  The court made findings supported by the record and acted within the bounds of its discretion by excluding the first expert's testimony for the two reasons it explained on the record.

[¶10]  First, the court did not err by finding that the proffered expert lacked the qualifications necessary to offer an opinion as to whether Burbank was suffering from auto-brewery syndrome.  *See Tolliver v. Dept. of Transp.*, 2008 ME 83, ¶ 35, 948 A.2d 1223 (holding that an expert witness was not qualified to give an opinion on accident causation because he lacked training on accident reconstruction and was unfamiliar with the scene of the car crash at issue).  The expert testified that, although she has a Ph.D. in toxicology and physiology, she had not taken any classes on auto-brewery syndrome and had neither performed any studies nor worked directly on matters relating to the syndrome.  Instead, her knowledge regarding the syndrome appears to have

---

to "decide any preliminary question about whether a witness is qualified . . . or evidence is admissible"—precisely the issue here.

stemmed entirely from her review of four articles and four abstracts of different articles she cited during her testimony—sources that predominantly consist of individual case studies. As the court properly observed while addressing the framework set out in Rule 702, because the witness had no hands-on, experience-based understanding of auto-brewery syndrome, in order for her to qualify as an expert witness any expertise needed to be derived from some other informational source, which here were the articles and abstracts in the professional literature. *See* M.R. Evid. 702. But as the court found with support in the record, the amount of available research material on auto-brewery syndrome is "thin." The court was entitled to determine, as it did, that the witness's review of only a small number of case studies—even when combined with her general qualifications as a toxicologist and physiologist—did not qualify her to provide expert testimony about auto-brewery syndrome.

[¶11] Second, the court did not err by concluding in the alternative that the evidence was insufficient to demonstrate that auto-brewery syndrome, as it is understood through the literature, has any bearing on this case. *See Rourke*, 2017 ME 10, ¶¶ 16-17, 154 A.3d 127; *Ericson*, 2011 ME 28, ¶ 12, 13 A.3d 777. In an attempt to make that connection, Burbank presented the court with an offer of proof describing his anticipated trial testimony: he had not consumed

alcohol since the beginning of 2016; he has a family history of diabetes and had been found to be pre-diabetic; and at the time of his arrest he was eating a high-sugar diet and had been taking a prescribed antibiotic for two days.

[¶12] During her testimony, the witness acknowledged that she had not independently examined Burbank, nor had she ordered any lab work or other testing to determine the levels of yeasts or fungi in Burbank's system that would have been necessary for ethyl alcohol to be produced endogenously. Instead, she pointed to blood tests conducted during routine medical exams in April 2016 and January 2017 showing that Burbank then had levels of blood glucose that were slightly above the normal range. She also noted that the antibiotic he had taken prior to his arrest might have killed his normal bacterial gut flora, which could have resulted in elevated levels of fungal yeasts, which could have then combined with excess glucose to produce ethyl alcohol—but only if there was a contemporaneous "slowing of the gut or stasis in the areas of the gut." The resulting alcohol, she stated, would work its way into the bloodstream and then into the lungs so that it can be detected in the person's breath, although a breath test instrument cannot reveal whether the alcohol was introduced to the person's system endogenously or exogenously. The witness expressed the opinion that, given Burbank's claim that he had not

consumed alcohol at any time relevant to this case, the alcohol in his breath must have been caused by this sequence of events.

[¶13]    Notwithstanding her opinion, the witness admitted that the available information regarding Burbank's condition and symptomatology did not closely match any of the limited number of case studies referenced in the articles and abstracts.  She also acknowledged that none of the medical records she had reviewed showed what bacteria or yeast were present in Burbank's system, nor did they indicate the conditions within his system that, in her opinion, would have likely affected the production of alcohol at the time of his arrest.

[¶14]   At the conclusion of the hearing, the court excluded the expert's testimony stating that there was "not enough evidence to show that the hypothesis is tied to the facts of this case and [there are] actually significant differences between most of the case studies and the evidence that we have here about Mr. Burbank."

[¶15]    A trial court is entitled to exclude expert testimony that is supported only by evidence that is so general as to lack reliability and therefore is not relevant.  *See Rourke*, 2017 ME 10, ¶¶ 15-17, 154 A.3d 127; *State v. Hatt*, 2002 ME 166, ¶ 9, 810 A.2d 415.  Here, the trial court acted within its discretion

by excluding the witness's ostensibly expert testimony. The court was entitled to determine that, as a matter of admissibility, the evidence proffered by Burbank could not reasonably allow a jury to draw a connection between Burbank's elevated glucose levels in April of 2016 and January of 2017 and his ingestion of an antibiotic in the days before his arrest, and the hypothesis that Burbank endogenously produced the alcohol detected in the blood alcohol test administered after Burbank was arrested.

B.    The Second Expert's Testimony

[¶16]   Burbank next argues that the court abused its discretion by excluding his proffered second expert's testimony on auto-brewery syndrome. He concedes that there was a late disclosure but contends that there was no resulting prejudice to the State because it had "plenty of time to respond."

[¶17]  The Maine Rules of Unified Criminal Procedure were promulgated to "secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." M.R.U. Crim. P. 2. The trial court is charged with promoting these objectives—which can sometimes be in tension—and does so in large part by the administration of sensible and fair case management practices. Thus, when a case has been pending for a significant period, the court must balance its "obligation to try to achieve justice

through due process," *Gammon v. Boggs*, 2018 ME 152, ¶ 6, 196 A.3d 900, and its duty to administer an orderly and efficient process for ensuring that a case timely proceeds to trial.

[¶18] Burbank was charged with OUI in August of 2016, and the court scheduled the case for a jury trial in August of the following year. A jury was impaneled, and the State's motion in limine to determine the admissibility of the first witness's testimony was scheduled to be heard several days before the jury trial was to commence. When Burbank designated the first expert witness, pursuant to Maine Rule of Unified Criminal Procedure 16A(b) the State reportedly requested that Burbank provide an expert report and other expert-related material, but Burbank did not do so in a timely way.[5] Instead, according to the State, Burbank provided expert-related material to the State just before the pretrial hearing was to be held. It appears that, for this reason, the court continued the in limine hearing, which resulted in a postponement of

---

[5] In its motion in limine to exclude testimony from the second expert witness, the State recounted the procedural history involving Burbank's efforts to offer expert testimony and represented that it had sent Burbank three written requests for production of expert reports and related material, *see* M.R.U. Crim. P. 16A(b)(2), with the first such request having been sent in November of 2016. The record does not include those requests, which is not unexpected because that process is conducted between the parties directly, but—even having been specifically given the opportunity to be heard further during a hearing on his motion for reconsideration—Burbank has not denied or otherwise contested the State's description of its repeated specific efforts to obtain the expert material from him.

the jury trial itself.[6]  Only after the court excluded the first expert's testimony in December of 2017 did Burbank try again, designating a second witness who would also testify about auto-brewery syndrome.

[¶19]  Burbank acknowledges that he provided the initial discovery concerning that expert to the State on January 10, 2018.  Pursuant to M.R.U. Crim. P. 16A(b)(2), however, the deadline for a defendant to provide the State with expert-related material is fourteen days before the scheduled date of the dispositional conference.  Here, that scheduled date was January 9, *2017*— meaning that Burbank provided the State with materials relevant to the second expert witness more than *one year* after the deadline.[7]  The court granted the State's motion to exclude the second expert's testimony.  In denying Burbank's motion to reconsider, the court explained that its practice was to apply

---

[6] The record contains a series of scheduling notices for the in limine hearing and the jury trial but does not set out an explanation for these changes in dates.  The scheduling changes, however, are consistent with the State's account, provided in its motion to exclude the testimony of Burbank's second expert witness, that at the last minute the court continued the August in limine hearing date because Burbank had failed to timely provide certain expert-related material to the State.  In its motion, the State also asserted that, during a telephonic conference among the court and counsel, the court granted a continuance of the August hearing date in lieu of a "more severe discovery sanction" against Burbank.  The record does not include a memorialization of such a conference, but, again, *see supra* n.5, Burbank has not challenged the State's description of this procedural history, even when the court gave him a direct opportunity to do so during the hearing on Burbank's motion to reconsider.

[7] The original date for the dispositional conference was continued because Burbank's attorney had a scheduling conflict, and the conference was held on March 13, 2017.  That schedule change, however, did not affect the deadline, calculated pursuant M.R.U. Crim. P. 16A(b)(2), by which Burbank was required to provide the expert material to the State.

deadlines, not slavishly, but in a way that promotes justice. The court further explained that, here, Burbank had "already had one designated [expert] and had litigation around it"; that Burbank was creating a "moving target" by "put[ting] up one expert, they don't get in so try somebody else"; and that it was not fair to the State, "right before trial," for Burbank to "jump on another expert and see where that comes in."

[¶20] Under the circumstances, where Burbank bore material responsibility for significant delays in the progression of this case, the court's ruling was an appropriate and fully justified exercise in case and docket management that promoted the interest of allowing a fair process in a case that had already been pending for nearly eighteen months. *See Mitchell v. Kieliszek*, 2006 ME 70, ¶ 19, 900 A.2d 719 (holding that "it is an appropriate exercise of the trial court's discretion to exclude expert witness testimony when the party seeking to elicit the opinion failed to designate the witness as an expert . . . in a timely fashion"); *see also* M.R.U. Crim. P. 16A(b)(2), (d).

C. Sixth Amendment Right to Present a Defense

[¶21] Finally, Burbank argues that by excluding both expert witnesses' testimony, the court violated his constitutional right to be able to present a defense.

[¶22]  The constitutional guarantee of a meaningful opportunity to present a complete defense, though rooted in the Due Process Clause of the Fourteenth Amendment, is nevertheless subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  "[S]tate . . . rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials . . . so long as [those rules] are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)); *see also State v. Cross*, 1999 ME 95, ¶ 7, 732 A.2d 278.

[¶23]  Contrary to Burbank's assertion, the court's considered and reasonable application of established principles of evidence and case management did not result in a constitutional deprivation to Burbank.

### III.  CONCLUSION

[¶24]  The court's decisions to exclude the testimony of Burbank's two successively designated expert witnesses were not abuses of its discretion and were well within constitutional limits.  We therefore affirm the convictions.  Because of the specific grounds that lead us to this outcome, however, our opinion should not be construed as implicitly accepting the notion that the crime of OUI does not encompass a situation where the alcohol in the accused's

system is generated through some endogenous process.  The parties have not developed meaningful presentations on that broader question, and the court based its ruling entirely on narrower evidentiary principles.  Absent a fully developed record and sufficient advocacy that would allow a proper analysis of that categorical question, we leave its resolution to another day.

The entry is:

Judgment affirmed.

---

ALEXANDER, J., concurring.

[¶25]  John M. Burbank was arrested on suspicion of operating under the influence on August 9, 2016.  Shortly after his arrest, Burbank's blood alcohol level was measured at .31 grams of alcohol per 100 milliliters of blood or 210 liters of breath—nearly four times the legal limit.[8]  The blood test presented a considerable challenge to defense of the charge.  Burbank, assisted by creative counsel, proved up to the task.  He asserted that, without his consuming any alcohol, his body had spontaneously produced alcohol, and that

---

[8]  The complaint against Burbank states that he was tested as having a blood alcohol level of .15 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath.  Although the results of the test are not in the record, the record contains a video of Burbank taking an Intoxilyzer breath test after his arrest.  Burbank's first proffered expert testified at a pretrial hearing that the test results showed a blood alcohol level of .31; Burbank accepts this measurement in his brief.

he was "involuntarily intoxicated," creating a reasonable doubt as to the voluntariness of his .31 blood alcohol content. (Appellant's Br. 2, 11, 13, 17.)

[¶26] Burbank acknowledges that his defense "is an uncommon one, to be sure." (Appellant's Br. 17.) He argues that the trial court, in rejecting his proffered expert testimony, deprived him of his right "to present an otherwise promising defense" creating a reasonable doubt about the voluntariness of his condition. (Appellant's Br. 25-26.)

[¶27] Burbank's defense may be "uncommon" because we explicitly rejected the "involuntary intoxication" defense to an OUI charge nearly forty years ago in *State v. West*, 416 A.2d 5, 6-9 (Me. 1980).[9] "Since the only elements of the offense charged are operating a motor vehicle and being under the influence of intoxicating liquor while doing so, it follows that intoxication—whether self-induced or not self-induced—cannot establish a reasonable doubt as to the existence of any element of the particular offense here in question." *Id.* at 8.

[¶28] The Court's opinion, sidestepping the validity of Burbank's "uncommon" defense, directly addresses the merits of the trial court's

---

[9] *West* was decided before the 1994 recodification of the Motor Vehicle Code, P.L. 1993, ch. 683 (effective Jan. 1, 1995), at a time when the OUI law was codified at 29 M.R.S.A. § 1312 (1978); the text of the then-applicable statute appears in the opinion. *State v. West*, 416 A.2d 5, 6 n.1 (Me. 1980).

exclusion of Burbank's proffered experts. Justifying that choice, the Court observes that: "our opinion should not be construed as implicitly accepting the notion that the crime of OUI does not encompass a situation where the alcohol in the accused's system is generated through some endogenous process. The parties have not developed meaningful presentations on that broader question, and the court based its ruling entirely on narrower evidentiary principles. Absent a fully developed record and sufficient advocacy that would allow a proper analysis of that categorical question, we leave its resolution to another day." Court's Opinion ¶ 24. Thus, despite the "uncommon" defense being a central focus of Burbank's arguments, the Court leaves for "another day" the question of whether, after forty years, *West* remains settled law in the State of Maine.

[¶29] I concur in the Court's opinion affirming the trial court's judgment. I do not concur in or join the Court's reasoning addressing the merits of the exclusion of the proffered experts without first considering whether the proffered expert testimony was relevant to any issue at trial, and perhaps suggesting thereby that involuntariness might be a defense to an excessive blood alcohol charge. If the Court's approach prevails, and the "uncommon"

defense is left unaddressed, it may invite many "I didn't know there was vodka in my orange juice" or similar defenses to OUI/EBA charges.[10]

[¶30]  The statute prohibiting operating under the influence, 29-A M.R.S. § 2411(1-A)(A) (2018), prohibits operating a motor vehicle "(1) While under the influence of intoxicants; or (2) While having an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath."  Thus, OUI is defined to include only two elements: (1) the forbidden conduct of operating a motor vehicle, and (2) the attendant circumstances of being under the influence of intoxicants or having a blood alcohol content of .08 or greater. *See* 17-A M.R.S. § 32 (2018); 29-A M.R.S. § 2411(1-A)(A).

[¶31]  On its face, and as we held in *West*, the statute suggests no mens rea element and no exception for involuntariness; Burbank's brief includes no citation to the contrary.  Despite a paucity of supporting precedent, Burbank contends that his auto-brewery syndrome affliction rendered his conduct of operating with a .31 blood alcohol content involuntary, exempting him from

---

[10]  The term "EBA" references excessive blood alcohol, the alternative in the OUI law that, if excessive blood alcohol content is proved, does not require proof of impairment to support a conviction.  *See* 29-A M.R.S. § 2411(1-A)(A)(2) (2018) ("A person commits OUI if that person . . . [o]perates a motor vehicle . . . [w]hile having an alcohol level of 0.08 grams or more of alcohol per 100 milliliters of blood or 210 liters of breath.").

criminal liability, or at least creating a reasonable doubt as to his guilt. *See* 17-A M.R.S. § 103-B(1) (2018).

[¶32] Two years ago, in another OUI appeal, we held that involuntariness is a defense to a crime, but will only "negate the actus reus of a crime when the *forbidden conduct* was an involuntary act, that is, the conduct was caused by a reflex, seizure, or some other act over which the defendant had no conscious control." *State v. Griffin*, 2017 ME 79, ¶¶ 17, 19, 159 A.3d 1240 (emphasis in original); *see also State v. Morrison*, 2016 ME 47, ¶ 9, 135 A.3d 343. "Voluntary conduct is the result of an exercise of [a] defendant's conscious choice to perform [it]," whatever the source of the motivation to do so, "whereas involuntary conduct includes reflex[es], convulsion[s], or other act[s] over which a person has no control." *Morrison*, 2016 ME 47, ¶ 7, 135 A.3d 343 (alterations in original). "Conscious choice is best understood by what it is not: a reflexive or convulsive action." *Id.* ¶ 9.

[¶33] To his credit, Burbank does not argue that the alcohol allegedly produced in his gut made his operation of his vehicle physically involuntary or the result of a reflex or convulsion over which he had no conscious control.

[¶34] The constitutional right to present a defense is not unlimited. A defendant's "right to compulsory process does not provide him with 'an

unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *State v. Cross*, 1999 ME 95, ¶ 7, 732 A.2d 278 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); s*ee also State v. Willoughby*, 507 A.2d 1060, 1068 (Me. 1986).

[¶35]  To be admissible under M.R. Evid. 702, a trial court must determine that proffered expert testimony "(1) is relevant in accordance with M.R. Evid. 401, and (2) will assist the trier of fact in understanding the evidence or determining a fact at issue." *State v. Ericson*, 2011 ME 28, ¶ 11, 13 A.3d 777. The evidence Burbank sought to present through his proffered experts was irrelevant to any issue that would have helped the jury understand the issues and the evidence.  After receiving an offer of proof, the trial court could have— and perhaps should have—excluded the evidence as irrelevant, without hearing evidence regarding the reliability of the evidence.  This Court should decide the issue of the involuntary intoxication defense directly rather than appear to acknowledge it by reaching the expert qualifications issue while deferring the issue we decided forty years ago "to another day."

[¶36]  I would affirm the judgment and hold that the "uncommon" defense offered by Burbank fails pursuant to our decision in *West*, rendering it unnecessary to reach the expert qualifications issue.

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant John M. Burbank

Matthew R. Gerety, Esq. (orally), Lincoln County District Attorney's Office, Wiscasset, for appellee State of Maine

Lincoln County Unified Criminal Docket docket number CR-2016-622
FOR CLERK REFERENCE ONLY