Concurrence: ALEXANDER, J.
HJELM, J.
*853 [¶1] John M. Burbank appeals from a judgment convicting him of operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A) (2018), and operating beyond a license condition or restriction (Class E), 29-A M.R.S. § 1251(1)(B) (2018), issued by the trial court (Lincoln County, Billings, J. ) after Burbank entered a conditional plea of nolo contendere to each charge, see M.R.U. Crim. P. 11(a)(2). Burbank contends that the trial court erred by excluding testimony of two witnesses whom Burbank had designated-seriatim-as experts to testify that at the time of his arrest he had a condition known as "auto-brewery syndrome,"[1] a phenomenon associated with the production of alcohol within the body itself under certain circumstances. The record supports the court's findings that Burbank's first witness was not sufficiently qualified to testify about auto-brewery syndrome generally and did not have a sufficient basis to express an opinion that Burbank had that condition at the time of his arrest or that any such condition accounted for the blood alcohol level detected in a breath test administered after he was arrested. Additionally, the trial court acted within its discretion by excluding testimony of Burbank's second proposed expert witness because Burbank designated her far too belatedly. We therefore affirm the judgment.
I. CASE HISTORY
[¶2] On August 9, 2016, Burbank was arrested and charged with operating under the influence and operating beyond a license condition or restriction.[2] He pleaded not guilty to both charges, and the court scheduled a jury trial to be held in August of 2017. During the pretrial proceedings, Burbank designated an expert witness-a toxicologist to testify that, at the time of his arrest, Burbank was suffering from auto-brewery syndrome, a condition associated with the endogenous production of alcohol that could be detected in a breath alcohol test. The State filed a pretrial motion requesting that the court hold a hearing pursuant to Maine Rule of Evidence 104 to determine whether the expert's testimony was admissible, see M.R. Evid. 702.
[¶3] The court postponed the trial and, in December of 2017, held a hearing on the admissibility of the expert's testimony. At the conclusion of the hearing, where the court heard testimony from several witnesses, including Burbank's designated expert witness, the court orally ruled that *854 the proffered expert testimony was not admissible. The court first concluded that, although auto-brewery syndrome may well exist as a physiological phenomenon, Burbank's witness was not qualified to testify about it because she had no training or work experience relating to the condition and instead relied only on a limited number of case studies in this area of science, which is still emerging and is not the subject of much literature. The court also concluded that, because significant differences existed between Burbank's purported condition and that of patients with auto-brewery syndrome as revealed in the case studies, the witness's testimony did not sufficiently relate the syndrome to Burbank and to matters pertinent to this case.
[¶4] After the court excluded the first witness's testimony in December of 2017, Burbank designated a second expert on January 10, 2018, to testify that his alleged blood alcohol level at the time of his arrest was caused by auto-brewery syndrome. The State promptly filed a motion in limine, requesting that the court exclude the second expert's testimony as a sanction pursuant to M.R.U. Crim. P. 16A(d). In its motion, the State asserted that despite its multiple requests to Burbank, starting as early as November of 2016, for the production of an expert report and other expert-related material, Burbank had failed to provide that material at least fourteen days before the date set for the dispositional conference, which was January 9, 2017-more than a year earlier-as required by M.R.U. Crim. P. 16A(b)(2). The court granted the State's motion, issued an order excluding testimony from Burbank's second designated expert witness, and scheduled the jury trial to be held about two weeks later.
[¶5] After moving unsuccessfully for the court to reconsider the exclusion order and on the day before the jury trial was to be held, Burbank entered conditional pleas of nolo contendere to both charges, reserving his right to appeal and challenge the orders excluding testimony of the two proffered experts. See M.R.U. Crim. P. 11(a)(2). The court accepted Burbank's pleas and sentenced him to seven days in jail and a $ 750 fine on the OUI charge, with a concurrent jail sentence on the charge of operating beyond a license restriction or condition. This appeal followed. See 15 M.R.S. § 2115 (2018).
II. LEGAL ANALYSIS
[¶6] Burbank first asserts that the court erred by excluding the testimony of the first witness based on its alternative conclusions, cast as foundational matters, that she was not sufficiently qualified to render expert testimony on the medical condition of auto-brewery syndrome and that Burbank had not adequately related the basis of her opinion to the facts of this case.[3] He next contends that the court erred by excluding the testimony of his second proffered expert witness because of the late designation. Burbank finally asserts that the exclusion orders operated to deprive him of the constitutional right to present a defense. We address these challenges in turn.
*855 A. The First Expert's Testimony
[¶7] Maine Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or to determine a fact in issue." We review the court's ruling on the admissibility of expert testimony for an abuse of discretion. State v. Rourke , 2017 ME 10, ¶ 10, 154 A.3d 127 ; State v. Diana , 2014 ME 45, ¶ 35, 89 A.3d 132.
[¶8] For expert testimony to be admissible under Rule 702, "the trial court must determine that the testimony (1) is relevant in accordance with M.R. Evid. 401, and (2) will assist the trier of fact in understanding the evidence or determining a fact at issue." State v. Ericson , 2011 ME 28, ¶ 11, 13 A.3d 777 (quotation marks omitted); see also State v. Williams , 388 A.2d 500, 504 (Me. 1978). Expert testimony can be relevant only if it is reliable, see Ericson , 2011 ME 28, ¶¶ 12, 14, 13 A.3d 777, and so, for the evidence to be admissible, the court must make a preliminary determination that the proponent has presented a sufficient demonstration of reliability, see Rourke , 2017 ME 10, ¶ 11, 154 A.3d 127.[4] Indicia of reliability include "whether any studies tendered in support of the testimony are based on facts similar to those at issue; ... whether an expert's conclusion has been tailored to the facts of the case; ... [and] the nature of the expert's qualifications." Ericson , 2011 ME 28, ¶ 12, 13 A.3d 777 (quotation marks omitted).
[¶9] The court made findings supported by the record and acted within the bounds of its discretion by excluding the first expert's testimony for the two reasons it explained on the record.
[¶10] First, the court did not err by finding that the proffered expert lacked the qualifications necessary to offer an opinion as to whether Burbank was suffering from auto-brewery syndrome. See Tolliver v. Dept. of Transp. , 2008 ME 83, ¶ 35, 948 A.2d 1223 (holding that an expert witness was not qualified to give an opinion on accident causation because he lacked training on accident reconstruction and was unfamiliar with the scene of the car crash at issue). The expert testified that, although she has a Ph.D. in toxicology and physiology, she had not taken any classes on auto-brewery syndrome and had neither performed any studies nor worked directly on matters relating to the syndrome. Instead, her knowledge regarding the syndrome appears to have stemmed entirely from her review of four articles and four abstracts of different articles she cited during her testimony-sources that predominantly consist of individual case studies. As the court properly observed while addressing the framework set out in Rule 702, because the witness had no hands-on, experience-based understanding of auto-brewery syndrome, in order for her to qualify as an expert witness any expertise needed to be derived from some other informational source, which here were the articles and abstracts in the professional literature. See M.R. Evid. 702. But as the court found with support in the record, the amount of available research material on auto-brewery syndrome is "thin." The court was entitled to determine, as it did, that the witness's review of only a small number of case studies-even when combined with her general qualifications *856 as a toxicologist and physiologist-did not qualify her to provide expert testimony about auto-brewery syndrome.
[¶11] Second, the court did not err by concluding in the alternative that the evidence was insufficient to demonstrate that auto-brewery syndrome, as it is understood through the literature, has any bearing on this case. See Rourke , 2017 ME 10, ¶¶ 16-17, 154 A.3d 127 ; Ericson , 2011 ME 28, ¶ 12, 13 A.3d 777. In an attempt to make that connection, Burbank presented the court with an offer of proof describing his anticipated trial testimony: he had not consumed alcohol since the beginning of 2016; he has a family history of diabetes and had been found to be pre-diabetic; and at the time of his arrest he was eating a high-sugar diet and had been taking a prescribed antibiotic for two days.
[¶12] During her testimony, the witness acknowledged that she had not independently examined Burbank, nor had she ordered any lab work or other testing to determine the levels of yeasts or fungi in Burbank's system that would have been necessary for ethyl alcohol to be produced endogenously. Instead, she pointed to blood tests conducted during routine medical exams in April 2016 and January 2017 showing that Burbank then had levels of blood glucose that were slightly above the normal range. She also noted that the antibiotic he had taken prior to his arrest might have killed his normal bacterial gut flora, which could have resulted in elevated levels of fungal yeasts, which could have then combined with excess glucose to produce ethyl alcohol-but only if there was a contemporaneous "slowing of the gut or stasis in the areas of the gut." The resulting alcohol, she stated, would work its way into the bloodstream and then into the lungs so that it can be detected in the person's breath, although a breath test instrument cannot reveal whether the alcohol was introduced to the person's system endogenously or exogenously. The witness expressed the opinion that, given Burbank's claim that he had not consumed alcohol at any time relevant to this case, the alcohol in his breath must have been caused by this sequence of events.
[¶13] Notwithstanding her opinion, the witness admitted that the available information regarding Burbank's condition and symptomatology did not closely match any of the limited number of case studies referenced in the articles and abstracts. She also acknowledged that none of the medical records she had reviewed showed what bacteria or yeast were present in Burbank's system, nor did they indicate the conditions within his system that, in her opinion, would have likely affected the production of alcohol at the time of his arrest.
[¶14] At the conclusion of the hearing, the court excluded the expert's testimony stating that there was "not enough evidence to show that the hypothesis is tied to the facts of this case and [there are] actually significant differences between most of the case studies and the evidence that we have here about Mr. Burbank."
[¶15] A trial court is entitled to exclude expert testimony that is supported only by evidence that is so general as to lack reliability and therefore is not relevant. See Rourke , 2017 ME 10, ¶¶ 15-17, 154 A.3d 127 ; State v. Hatt , 2002 ME 166, ¶ 9, 810 A.2d 415. Here, the trial court acted within its discretion by excluding the witness's ostensibly expert testimony. The court was entitled to determine that, as a matter of admissibility, the evidence proffered by Burbank could not reasonably allow a jury to draw a connection between Burbank's elevated glucose levels in April of 2016 and January of 2017 and his ingestion of an antibiotic in the days before his arrest, and the hypothesis that Burbank endogenously produced the alcohol *857 detected in the blood alcohol test administered after Burbank was arrested.
B. The Second Expert's Testimony
[¶16] Burbank next argues that the court abused its discretion by excluding his proffered second expert's testimony on auto-brewery syndrome. He concedes that there was a late disclosure but contends that there was no resulting prejudice to the State because it had "plenty of time to respond."
[¶17] The Maine Rules of Unified Criminal Procedure were promulgated to "secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." M.R.U. Crim. P. 2. The trial court is charged with promoting these objectives-which can sometimes be in tension-and does so in large part by the administration of sensible and fair case management practices. Thus, when a case has been pending for a significant period, the court must balance its "obligation to try to achieve justice through due process," Gammon v. Boggs , 2018 ME 152, ¶ 6, 196 A.3d 900, and its duty to administer an orderly and efficient process for ensuring that a case timely proceeds to trial.
[¶18] Burbank was charged with OUI in August of 2016, and the court scheduled the case for a jury trial in August of the following year. A jury was impaneled, and the State's motion in limine to determine the admissibility of the first witness's testimony was scheduled to be heard several days before the jury trial was to commence. When Burbank designated the first expert witness, pursuant to Maine Rule of Unified Criminal Procedure 16A(b) the State reportedly requested that Burbank provide an expert report and other expert-related material, but Burbank did not do so in a timely way.[5] Instead, according to the State, Burbank provided expert-related material to the State just before the pretrial hearing was to be held. It appears that, for this reason, the court continued the in limine hearing, which resulted in a postponement of the jury trial itself.[6] Only after the court excluded the first expert's testimony in December of 2017 did Burbank try again, designating a second witness who would also testify about auto-brewery syndrome.
*858 [¶19] Burbank acknowledges that he provided the initial discovery concerning that expert to the State on January 10, 2018. Pursuant to M.R.U. Crim. P. 16A(b)(2), however, the deadline for a defendant to provide the State with expert-related material is fourteen days before the scheduled date of the dispositional conference. Here, that scheduled date was January 9, 2017 -meaning that Burbank provided the State with materials relevant to the second expert witness more than one year after the deadline.[7] The court granted the State's motion to exclude the second expert's testimony. In denying Burbank's motion to reconsider, the court explained that its practice was to apply deadlines, not slavishly, but in a way that promotes justice. The court further explained that, here, Burbank had "already had one designated [expert] and had litigation around it"; that Burbank was creating a "moving target" by "put[ting] up one expert, they don't get in so try somebody else"; and that it was not fair to the State, "right before trial," for Burbank to "jump on another expert and see where that comes in."
[¶20] Under the circumstances, where Burbank bore material responsibility for significant delays in the progression of this case, the court's ruling was an appropriate and fully justified exercise in case and docket management that promoted the interest of allowing a fair process in a case that had already been pending for nearly eighteen months. See Mitchell v. Kieliszek , 2006 ME 70, ¶ 19, 900 A.2d 719 (holding that "it is an appropriate exercise of the trial court's discretion to exclude expert witness testimony when the party seeking to elicit the opinion failed to designate the witness as an expert ... in a timely fashion"); see also M.R.U. Crim. P. 16A(b)(2), (d).
C. Sixth Amendment Right to Present a Defense
[¶21] Finally, Burbank argues that by excluding both expert witnesses' testimony, the court violated his constitutional right to be able to present a defense.
[¶22] The constitutional guarantee of a meaningful opportunity to present a complete defense, though rooted in the Due Process Clause of the Fourteenth Amendment, is nevertheless subject to "reasonable restrictions." United States v. Scheffer , 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). "[S]tate ... rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials ... so long as [those rules] are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " Id. (quoting Rock v. Arkansas , 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) ); see also State v. Cross , 1999 ME 95, ¶ 7, 732 A.2d 278.
[¶23] Contrary to Burbank's assertion, the court's considered and reasonable application of established principles of evidence and case management did not result in a constitutional deprivation to Burbank.
III. CONCLUSION
[¶24] The court's decisions to exclude the testimony of Burbank's two successively designated expert witnesses were not abuses of its discretion and were well within constitutional limits. We therefore affirm the convictions. Because of the specific grounds that lead us to this outcome, *859 however, our opinion should not be construed as implicitly accepting the notion that the crime of OUI does not encompass a situation where the alcohol in the accused's system is generated through some endogenous process. The parties have not developed meaningful presentations on that broader question, and the court based its ruling entirely on narrower evidentiary principles. Absent a fully developed record and sufficient advocacy that would allow a proper analysis of that categorical question, we leave its resolution to another day.
The entry is:
Judgment affirmed.

Auto-brewery syndrome is also called "gut-fermentation syndrome."

The issues on appeal regarding admissibility of expert testimony were addressed and resolved by pretrial motions that centered on the qualifications of the first proffered expert witness and the relevance of her testimony to this case, and on the timing of Burbank's designation of the second expert. Therefore, the record contains no substantive evidence regarding the circumstances of Burbank's stop and arrest.

At the beginning of oral argument on this appeal, Burbank seemed to retreat from the claim, which he had fully briefed, that the court erred by excluding the first proffered expert's testimony, when he stated that "in a sense we can forget about [that issue] ... ; it's kind of beside the point now because [Burbank] found a better expert." Later during argument, however, Burbank told us that "there is no concession in regards to the first assignment of error.... I want to make sure [that issue is] alive." Because Burbank has not unambiguously abandoned the claim relating to the exclusion of testimony from the first witness, we proceed to address the merits of that contention.

Burbank asserts on appeal that "[l]ike 'credibility,' the 'reliability' of evidence is a factual finding" reserved only for the fact-finder. To the contrary, Maine Rule of Evidence 104(a) requires the court to "decide any preliminary question about whether a witness is qualified ... or evidence is admissible"-precisely the issue here.

In its motion in limine to exclude testimony from the second expert witness, the State recounted the procedural history involving Burbank's efforts to offer expert testimony and represented that it had sent Burbank three written requests for production of expert reports and related material, see M.R.U. Crim. P. 16A(b)(2), with the first such request having been sent in November of 2016. The record does not include those requests, which is not unexpected because that process is conducted between the parties directly, but-even having been specifically given the opportunity to be heard further during a hearing on his motion for reconsideration-Burbank has not denied or otherwise contested the State's description of its repeated specific efforts to obtain the expert material from him.

The record contains a series of scheduling notices for the in limine hearing and the jury trial but does not set out an explanation for these changes in dates. The scheduling changes, however, are consistent with the State's account, provided in its motion to exclude the testimony of Burbank's second expert witness, that at the last minute the court continued the August in limine hearing date because Burbank had failed to timely provide certain expert-related material to the State. In its motion, the State also asserted that, during a telephonic conference among the court and counsel, the court granted a continuance of the August hearing date in lieu of a "more severe discovery sanction" against Burbank. The record does not include a memorialization of such a conference, but, again, see supra n.5, Burbank has not challenged the State's description of this procedural history, even when the court gave him a direct opportunity to do so during the hearing on Burbank's motion to reconsider.

The original date for the dispositional conference was continued because Burbank's attorney had a scheduling conflict, and the conference was held on March 13, 2017. That schedule change, however, did not affect the deadline, calculated pursuant M.R.U. Crim. P. 16A(b)(2), by which Burbank was required to provide the expert material to the State.